AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

United States of America
v.

Christopher WASHINGTON

*Defendant(s)*

Case No. 2:21-mj-21

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of 01/13/2021 in the county of Franklin in the Southern District of Ohio, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 USC Section 846, Title 21 USC Section 841 (a)(1)(A)(ii)(II) | Conspiracy to Possess and Distribute more than 5000 grams of a mixture and a substance containing cocaine |
| Title 21 USC Section 846, Title 21 USC Section 841 (a)(1)(A)(i) | Conspiracy to Possess and Distribute more than 1000 grams of a mixture and a substance containing heroin |
| Title 21 USC 841 (a)(1) | Possession with Intent to Distribute a mixture and a substance containing cocaine |

This criminal complaint is based on these facts:
See Attached Affidavit

☒ Continued on the attached sheet.

*Complainant's signature*

DEA Special Agent Christopher Cadogan
*Printed name and title*

Sworn to before me and signed in my presence. **By video**

Date: January 15, 2021

Elizabeth A. Preston Deavers
United States Magistrate Judge

City and state: Newark, Ohio

# AFFIDAVIT

I, Christopher Cadogan, having been duly sworn, state the following:

## INTRODUCTION

1. Your Affiant is a Special Agent with the Drug Enforcement Administration (DEA) and has been so employed for approximately twenty-four years. I am currently assigned to Group Four of the DEA's Columbus District Office. This group is currently comprised of narcotics investigators from the DEA and the Columbus Police Department. Group Four was designed, in part, to target individuals and groups involved in the manufacture and distribution of methamphetamine, cocaine, heroin, and fentanyl in Franklin County, Ohio. Prior to being employed by the DEA, I was employed for approximately two and one-half years as a Border Patrol Agent. As a Border Patrol Agent I was cross-designated to make federal arrests of individuals in violation of Title 21 of the United States Code. For more than twenty-six years, I have had the authority to make federal drug arrests.

2. As a DEA Special Agent, Your Affiant has participated in hundreds of narcotics investigations involving various types of controlled substances. I have received substantive advanced training pertaining to the investigation of various crimes which arise from narcotics trafficking, including money laundering, the use of interstate transportation in the furtherance of narcotics trafficking, the use of the United States Postal Service facilities in furtherance of narcotics trafficking, and the use of telecommunications facilities in the furtherance of narcotics trafficking. I have participated in investigations involving the purchase of controlled substances from suspected narcotics traffickers using both undercover narcotics investigators and confidential sources. I have participated in the drafting and execution of search warrants for narcotics, proceeds from the sale of narcotics, documentary evidence of narcotics trafficking, and for the telecommunications devices used by narcotics traffickers. I have conducted surveillances in connection with narcotics investigations. I have authored five affidavits supporting federal wire and electronic intercepts of known and suspected narcotics traffickers.

3. Through the course of these investigations, I have personally interviewed confidential sources, and other persons, involved in the distribution of illegal narcotics. I have also interviewed persons arrested for the distribution of illegal narcotics. I have spoken with more experienced narcotics investigators with whom I have worked concerning the practices of narcotics traffickers and the best investigative methods to use when conducting investigations of narcotics trafficking organizations. Through the course of my investigations and through my conversations with more experienced narcotics investigators, I have become familiar with the methods and means utilized by persons who participate in the illegal distribution of controlled substances.

## PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of an application for a federal arrest warrant and criminal complaint against Christopher WASHINGTON and Annette Lashae GRAVES for conspiring with others, both known and unknown, to possess with the intent to distribute 5000 grams or more of a mixture and a substance containing cocaine, a schedule II controlled

1

substance, in violation of Title 21 846 and Title U.S.C. § 841 (a)(1) (A)(ii)(II), and for conspiring with others, both known and unknown, to possess with the intent to distribute 1000 grams or more of a mixture and a substance containing heroin, a schedule I controlled substance, in violation of Title 21 846 and Title U.S.C. § 841 (a)(l)(A)(i). In addition, WASHINGTON knowingly and intentionally possessed with intent to distribute approximately 200 grams of a mixture and a substance containing cocaine. My knowledge of this investigation is based upon my own personal observations, as well as the observation and investigation conducted by other law enforcement officers knowledgeable of the facts and circumstances involved in the subject investigation. I have not included in this Affidavit all the facts known to me, but only that information sufficient to establish probable cause to believe that Christopher WASHINGTON and Annette Lashae GRAVES committed violations of Title 21 846 and Title U.S.C. § 841 (a)(1)(A)(ii)(II), Title 21 846, and Title U.S.C. § 841 (a)(1)(A)(i), and WASHINGTON committed a violations of Title U.S.C. § 841 (a)(1).

## SUMMARY OF PROBABLE CAUSE

5. On January 13, 2021, at approximately 1:44 p.m., Texas DPS Trooper Danny Nunez stopped a gray Ford Expedition, bearing California license plate 6ACF918, for expired registration. The vehicle was driven by Annette Lashae GRAVES. She was the sole occupant of the vehicle. The vehicle was registered to Christopher WASHINGTON.

6. Pursuant to a consent search of the Ford Expedition, Trooper Nunez subsequently discovered approximately 6640.7 gross grams of suspected cocaine and 2312.3 gross grams of suspected heroin inside the center console.

7. DEA Special Agent (SA) Christopher Brown conducted presumptive field tests on samples taken from the suspected cocaine and heroin. The samples subsequently tested positive for the presence of cocaine and heroin respectively.

8. GRAVES was arrested and advised of her rights as they pertain to the Miranda Decision. GRAVES agreed to waive her rights and speak with investigators.

9. According to GRAVES, she was being paid $1,500.00 by her boyfriend to transport a shipment of illicit drugs to her boyfriend's house located at 1389 Republic Avenue in Columbus, Ohio. According to GRAVES, her boyfriend was Christopher WASHINGTON. A computer records check identified WASHINGTON as Christopher M. WASHINGTON. WASHINGTON has a prior arrest in Ohio for assault. According to GRAVES, WASHINGTON obtained the drugs from unknown individuals in California.

10. According to GRAVES, this was the third time that she had been paid to transport drugs by WASHINGTON.

11. GRAVES agreed to assist the DEA in conducting a controlled delivery of the cocaine and heroin to WASHINGTON in Columbus, Ohio.

12. DEA special agents and task force officers assigned to the Amarillo Post of Duty transported the cocaine and the heroin seized from the Expedition, the Expedition, and GRAVES herself to the outskirts of Columbus, Ohio. On the morning of January 14, 2021, they were met by investigators assigned to the DEA's Columbus District Office at the Fuel Mart located at 404 North Urbana Street in South Vienna, Ohio 45369. At this location, the vehicle was staged in the parking lot with sham narcotics placed into the center console where the actual cocaine and heroin had previously been placed.

13. On January 14, 2021, at approximately 11:48 a.m., GRAVES initiated a series of text messages to WASHINGTON advising him that his Expedition had broken down at the Fuel Mart and that she needed help. Eventually WASHINGTON sent a text message saying that he was "on my way".

14. At approximately 12:59 p.m., investigators observed WASHINGTON depart his residence on Republic Avenue alone in a gray Ford F-150, bearing Ohio temporary license plate M016901, registered to Christopher WASHINGTON.

15. At approximately 1:44 p.m., investigators observed WASHINGTON pull into the Fuel Mart parking lot and park north of the Expedition. WASHINGTON subsequently inspected the interior of the Expedition and then looked under the hood in an apparent attempt to ascertain why the Expedition wouldn't start.

16. Because the quality of the transmitted conversation was poor and investigators were concerned about GRAVES' safety, investigators moved in to arrest WASHINGTON.

17. WASHINGTON invoked his rights as they pertain to the Miranda Decision and declined to speak with investigators.

18. On January 14, 2021, at approximately 6:00 p.m., U.S. Magistrate Judge Chelsey M. Vascura authorized a federal search warrant for WASHINGTON's residence located at 1389 Republic Avenue in Columbus, Ohio. The affidavit written in support of this search warrant was written by Your Affiant.

19. Pursuant to the execution of this warrant, DEA special agents and task force officers seized approximately 245.4 gross grams of suspected cocaine, a loaded Hi-Point Firearms Model CF-380, 380 ACP semi-automatic pistol, serial number P801099, multiple scales containing a white powder residue, and two GPS vehicle trackers of the sort utilized by drug traffickers to track vehicles carrying drug loads. The amount of cocaine discovered inside WASHINGTON's residence was consistent with distribution.

20. DEA Task Force Officer Phil Miller conducted a presumptive field test on a sample taken from the suspected cocaine discovered inside WASHINGTON's residence. The sample subsequently tested positive for the presence of cocaine.

3

## CONCLUSION

21. Based upon the information presented in this affidavit, there is probable cause to believe that beginning on or about January 13, 2021, in the Southern District of Ohio, Christopher WASHINGTON and Annette Lashae GRAVES, did knowingly and intentionally conspired with others, both known and unknown, to possess with the intent to distribute 5000 grams or more of a mixture and a substance containing cocaine, a schedule II controlled substance, in violation of Title 21 846 and Title 21, U.S.C. § 841 (a)(1)(A)(ii)(II), and conspired with others, both known and unknown, to possess with the intent to distribute 1000 grams or more of a mixture and a substance containing heroin, a schedule I controlled substance, in violation of Title 21 846 and Title 21, U.S.C. § 841 (a)(1)(A)(i). In addition, WASHINGTON knowingly and intentionally possessed with intent to distribute approximately 200 grams of a mixture and a substance containing cocaine, in violation of Title 21 U.S.C. § 841 (a)(1).

Christopher Cadogan, Special Agent
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me this 15 day of January, 2021.

Elizabeth A. Preston Deavers
United States Magistrate Judge

4